## Wingett *v.* Bell.

*Legacies charged on lands—Alienee, in possession, liable.*

A devisee of land charged with exclusive right of residence in the mansion house, vested in the widow, together with a charge for her comfortable support and maintenance, accepting the devise, becomes personally liable for the charge. And the alienee of the devisee, who takes the land cum onere becomes personally liable for the arrears accruing during the continuance of his estate, the charge following the land.

As between the original devisee out of possession and the alienee in possession, equity would hold the latter to the performance of the obligation, since the means to perform and the fund specially charged are in his exclusive control.

*Jurisdiction, O. C.—Legacies charged on land.*

The orphans' court under Act of February 24, 1834, P. L. 70, has exclusive equitable jurisdiction in the case of legacies charged on land.

Argued April 17, 1900. Appeal, No. 62, April T., 1900, by defendant, in suit of Silas Wingett, executor of the estate of Hannah Wingett, deceased, against Hamilton K. Bell, from decree of O. C. Washington Co., Feb. T., 1894, No. 64, sustaining bill for support and maintenance. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Hearing on bill, answer and proofs. Before TAYLOR, J.

It appears from the record that the prayer of the petition was for a citation on defendant to show cause why he should not pay to the petitioner the amount of the rental value of a mansion house and the amount required for the support and maintenance of Hannah Wingett in accordance with the provisions of the will of Reuben Wingett, deceased.

The facts sufficiently appear in the opinion of the court.

The court below made the following decree :

[Now, July 10, 1899, this cause came on to be heard on the testimony taken and was argued by counsel, whereupon, upon due consideration thereof, it is ordered, adjudged and decreed that the said H. K. Bell, respondent in this proceeding, pay to Silas Wingett, executor of the will of Hannah Wingett, deceased, the sum of $524.23 in full payment for the suppport and maintenance of the said Hannah Wingett, deceased, by reason of his being the vendee of land charged with her support and maintenance, as found in the foregoing opinion. And it is further ordered and decreed that the estate of Hannah Wingett pay one half of the costs of this proceeding, and H. K. Bell the other one half of the costs of this proceeding.] [1]

Defendant appealed.

*Error assigned* was in entering the decree, reciting same.

*Jno. C. Bane*, for appellant.—When he accepted the land, under the will, he made himself personally liable for the comfortable support and maintenance of Hannah Wingett whiie she remained single. Whether, under the circumstances of this case, Bell, the appellant, and the alienee of the land, is liable or not, Silas Wingett remained liable to Hannah Wingett for her comfortable support and maintenance so long as she remained single : Steele's Appeal, 47 Pa. 437 ; Hoover v. Hoover, 5 Pa. 351.

As is said in Glen v. Fisher, 6 Johns. C. R. 33, a case which cannot, in this particular, be distinguished from the present, by acceptance, the devisee becomes absolutely bound for the legacies, and cannot set up any condition precedent to it, for the law makes none. He who accepts a benefit under a will, must conform to all its provisions, and renounce every right inconsistent with them.

Authorities for this position are numerous, but attention is called to the following : Coane v. Parmentier, 10 Pa. 72 ; Brandt's Appeal, 8 Watts, 198 ; Etter v. Greenawalt, 98 Pa. 422 ; Lobach's Case, 6 Watts, 167.

He was personally liable to her for this. It was a personal charge against him. It was a debt that he owed her. In furnishing her with comfortable support and maintenance, he was only giving her what she could have compelled him to give her, by a proceeding at law.

Our contention is, that being personally responsible to her to do this, and, in pursuance of that responsibility, having done it, he cannot now, as executor of her will, compel Hamilton K. Bell, the alienee of the farm devised to him, to pay the amount which he has expended. All claims of the estate of Hannah Wingett, by reason of the charge on the farm devised to Silas Wingett, have been satisfied by the furnishing of a comfortable support and maintenance to Hannah Wingett by Silas Wingett.

*T. F. Birch*, with him *J. W. Donnan* and *A. Donnan*, for appellee.—None of the cases cited go so far as to say that where maintenance and support are charged upon the land as this was, that a devisee deprived of the possession from which the maintenance is provided is personally liable therefor : Pierce v. Livingston, 80 Pa. 101 ; Steele's Appeal, 47 Pa. 437.

This is also the law of Mohler's Appeal, 8 Pa. 26, distinguishing Hoover v. Hoover, 5 Pa. 351, and followed by a long line of affirmative cases.

In the language of Mounts's Appeal, 107 Pa. 402, when the testator directed that the widow should have her maintenance off the farm during her life, "he did not intend that this appropriation should be used merely as a supplement to her own industry or to the charity of her child or children."

The second contention of appellant, that the executor of Hannah Wingett cannot maintain this proceeding is fully answered by reference to section 28 of the Act of February 24, 1834, P. L. 70.

OPINION BY WILLIAM W. PORTER, J., July 26, 1900:

The portions of the will of Reuben Wingett, out of which this controversy arises, are : " I give and bequeath unto my son Silas, the farm on which I now reside, supposed to contain about one hundred and twenty-five acres, reserving to my wife the exclusive use of my mansion house while she shall remain my widow, or is capable of managing it, and while my daughters Jane and Amanda shall remain single, it is my will that they both have a home in the house. . . . My wife is to have a comfortable support and maintenance off the proceeds of the farm while she remains single. My son Silas to have possession of the farm when he shall arrive at the full age of twenty-five years, but he shall have no authority to sell the farm during the lifetime of his mother, nor under any circumstances until he shall be thirty years of age."

Silas Wingett accepted the devise of the farm and went into possession. He and his family occupied the mansion house, and the decedent's widow an adjacent small house, under agreement between them. On April 19, 1886, Silas Wingett made an assignment for the benefit of creditors. Sale was made of the farm by the assignees to H. K. Bell, on November 22, 1886. On December 31, 1887, Silas Wingett and his family with his mother, Hannah, left the farm. Some old furniture was left in the mansion house. It was tightly closed. Upon the door was posted, by Hannah Wingett, a notice forbidding trespass. From the time of removal until her death, August 3, 1890, Hannah, the widow of the decedent made her home with

Silas away from the farm.   By her will she appointed her son, Silas, executor.   On April 3, 1894, he as executor, presented a petition to the orphan's court for a citation to Bell, to appear and show cause why he should not pay rental value of the mansion house and the amount required for the support and maintenance of Hannah Wingett, during the period from January 1, 1888, until August 3, 1890.   The allegation is that under the provisions of the will quoted, Bell, as vendee of the assignee of Silas Wingett, is chargeable with the amount claimed.

It is contended by Bell, the respondent, that the widow of the decedent received her support and maintenance from Silas Wingett up to the time of her death, and that as the charge is a personal liability of the original devisee, the land and the alienee of the devisee are, therefore, discharged.   The provision made by Reuben Wingett for his wife was, by the terms of the will, a charge on the realty.   This is too plain to require the citation of authorities.   Indeed, the appellant concedes it. The provision was twofold.   First, the wife was given the "exclusive use of the mansion house while she shall remain my widow, or is capable of managing it," and second, "a comfortable support and maintenance off the proceeds of the farm." As to the first provision, it may be said that it is something more than a mere charge upon the land.   It would seem to come near to creating an interest in the land itself.   See Wusthoff v. Dracourt, 3 Watts, 240.   It is the gift of an exclusive right of possession and use of the mansion house.

The defendant, Bell, the owner of the land charged, used the mansion house during the period for which compensation is sought.   The widow was thus excluded from its use.   If living, she would be entitled to receive compensation therefor.   Being dead, the right survives to the executor of her will.   Bell, as alienee, was liable by privity of estate during the time he occupied the premises charged.   The legatee or annuitant had a personal remedy against him during the time he was in possession and received the profits.   The enforcement of payment was within the jurisdiction of the orphans' court, under the act of February 24, 1834: Mohler's Appeal, 8 Pa. 26.

There was no need, on the part of the widow, during life, to make demand upon Bell.   The burden was on him to discharge

the obligation imposed upon the land, and to furnish or tender performance to her. " The charge was in the nature of a debt which the debtor, in order to discharge himself of, must seek the creditor and perform, or offer to perform, his obligation: " Steele's Appeal, 47 Pa. 437. There is nothing in the case, whatever, showing that Hannah Wingett ever received from her son, Silas, compensation for the deprivation of the use of the mansion house. The course of the court below in enforcing the right to such compensation against Bell, the alienee, was, therefore, proper in substance and in form.

The appellant urges strongly that the second or supplemental .provision of the will for a " comfortable support and maintenance," has been fulfilled. Having removed from the farm, having made her home with her son, Silas, the original devisee of the land, and Silas having furnished support and maintenance up to the time of her death, it is claimed that the land and its holder are thereby released. There are many cases in Pennsylvania which hold, as contended by the appellant, that a devisee, accepting land subject to a charge, becomes personally liable for the charge by virtue of his acceptance of the devise : Steele's Appeal, supra ; Hoover v. Hoover, 5 Pa. 351 ; Lobach's Case, 6 Watts, 167 ; Etter v. Greenwalt, 98 Pa. 422. The liability may even extend to his estate after his death : Swoopes' Appeal, 27 Pa. 58; Coane v. Parmentier, 10 Pa. 72. There are, as well, cases which hold that the charge follows the land into the hands of an alienee of the devisee, who takes the land cum onere, and thereby becomes personally liable for the arrears accruing during the continuance of his estate (Mohler's Appeal, supra), the original devisee also remaining liable : Steele's Appeal, supra.

The act of February 24, 1834, (under the provisions of which this proceeding has been brought) by its terms and by the construction placed upon them by the Supreme Court, confers a comprehensive and exclusive equitable jurisdiction in the orphans' court, in the case of legacies charged on land : Mohler's Appeal, supra ; Downer v. Downer, 9 Watts, 60 ; Craven v. Bleakney, 9 Watts, 19 ; Strickler v. Scheaffer, 5 Pa. 240 ; Peirce v. Livingston, 80 Pa. 99 ; Brotzman's Appeal, 119 Pa. 645 ; Walker v. Gibson, 164 Pa. 512. By the terms of the act all parties interested may be brought into the litigation. This in-

cludes the executor of the will, the heirs or devisees, and extends to an alienee, who is clearly embraced in that portion of the act which directs notice to be served on such other persons as may be interested in the estate : Mohler's Appeal, supra. The rights of all of them may be considered and adjusted; the proceding is to be "according to equity."

In Steele's Appeal, supra, the question of the responsibility of the representatives of an alienee and two sons, devisees, of the decedent was raised. The court says : "Brodhead purchased the lands devised, subject to the provision in question, and it is charged on the lands in his hands ; his representatives, therefore, must make good what has been omitted by compensation in money. So, too, are the sons, devisees, answerable for the maintenance of the widow, as they accepted the devises on the terms of furnishing such maintenance, and they do not relieve themselves by a transfer." Then the case is sent back "to be proceeded in, in accordance with the views herein expressed, leaving the equities to be administered under them without further instructions to the court below." Thus it is apparent that the liability of the several parties for the performance of a charge or duty imposed upon real estate is to be determined, not by any fixed rule of sequence, but upon the broad, equitable considerations permitted by the character and scope of the proceeding, under the act of February 24, 1834.

What, then, is the status of Bell, the alienee and present holder of the land, in regard to the furnishing of the comfortable support to Hannah Wingett? Confessedly, he has not furnished it, although he has been in possession of the land. He has received the " proceeds of the farm " out of which the will specifically provides that the support shall come. The reason and basis of his liability, in law, is that he took the land cum onere, with knowledge of the charge. It may be assumed that as purchaser of the property, subject to the charge, he bought for a price lower than had the land been unencumbered. These considerations make it quite clear that in equity Bell should primarily be held liable for the charge during his holding of title and receipt of the usufruct out of which the charge was made primarily payable.

What is the status of Silas Wingett? By the rule of law, he became individually liable for the charge upon the real estate

when he accepted the devise. He lost the possession of the land, and thereafter ceased to receive or control the proceeds of the farm. His possible insolvency does not seem to have been contemplated by the testator, but the intention expressed by the will is that the land, and particularly the proceeds, were to be the primary fund for the discharge of the obligation imposed. The charge was not one which by promptly paying, the son might acquire a fee in the land devised. It was a continuing charge, which could only be strictly performed during tenure and occupancy of the farm by the devisee. As between the original devisee out of possession, and the alienee in possession, equity would hold the latter to the performance of the obligation, since the means to perform and the fund specially charged are in his exclusive control.

It is, however, urged that as Hannah Wingett lived with her son, Silas, after leaving the farm, and as she received support at his hands, the obligation has been in fact performed by the devisee, who, under the rule of law, was liable. The support and maintenance were, by the will of the testator, to be derived from a specific source, namely, the "proceeds of the farm." Plainly, that which she received from her son did not come from that source. It was not furnished because of inability to procure it from Bell, who was in possession, for no refusal on his part is shown. It is to be observed that aside from the obligation imposed by accepting the devise, Silas Wingett owed the moral and legal obligation to furnish his mother with support. This obligation is of a higher source and greater stringency than that imposed by the acceptance of the devise. The presumption is that the act done was in discharge of the higher obligation. Had Silas required his mother to leave his house to become a charge upon other relatives, or upon the county, the question now presented could not have arisen. Had she chosen to live with other relatives, who were under no obligation growing out of Reuben Wingett's will, the question could not have arisen. In the absence, then, of clear proof that the support given by Silas Wingett to his mother was agreed to be in discharge of the obligation to support imposed by the devise of the farm, it will be assumed that it was done in discharge of a filial duty. We hold that the charge imposed upon the respondent by the court below, was rightly charged in view of all the equities.

The decree is affirmed.